**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**Eastern Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **ALYSSA N JANVRIN AKA ALYSSA N TERRY** | ) ) | **Case No. 23-40934-659** |
| | ) | |
| Debtor. | ) | **Chapter 7** |
| | ) | |
| **PENNYMAC LOAN SERVICES, LLC** | ) | |
| | ) | |
| Movant, | ) | **DOCKET NO. _____** |
| | ) | |
| v. | ) | |
| | ) | |
| **ALYSSA N JANVRIN AKA ALYSSA N TERRY** | | |

**Respondent.**

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**AND MEMORANDUM IN SUPPORT THEREOF**

**COMES NOW,** PennyMac Loan Services, LLC and its subsidiaries, affiliates, predecessors in interest, successors or assigns ("Movant") by and through its attorneys, Melinda J. Maune, Amy Tucker Ryan and the law firm of Armstrong Teasdale LLP, in support of Movant's Motion for Relief from Automatic Stay states as follows:

  1.  On or about July 24, 2018 Christian Janvrin executed and delivered to DAS Acquisition Company, LLC, a Limited Liability Company a Note ("Note") in the original principal amount of $100,152.00. True and correct copies of the Note & Loan Modification are attached hereto as Exhibit "A" and incorporated herein by this reference.

  2.  The Note is secured by a Deed of Trust dated July 24, 2018, recorded on July 25, 2018, as Instrument # 2018R-022435. The Deed of Trust was executed and delivered by Alyssa Janvrin ("Debtor") and Christian Janvrin to Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for DAS Acquisition Company, LLC, its successors and assigns, securing the following property:

    ALL OF LOTS ELEVEN (11) AND TWELVE (12), BLOCK THIRTY SIX (36) OF THE
    ORIGINAL TOWN, NOW CITY OF DE SOTO, MISSOURI, PLAT BOOK 1 PAGE 1

1

The above-described property is also known as 900 S 2ND St, De Soto Missouri 63020 ("Property").  A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B" and incorporated herein by this reference.

3.    Movant is the owner and holder of the Note and Deed of Trust.  A true and correct copy of the Assignment of the Deed of the Trust is attached hereto as Exhibit "C" and incorporated herein by this reference. Movant asserts it has the right to foreclose should stay relief be obtained.

4.    Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code on March 20, 2023.

5.    The Note is past due in monthly payments to Movant for the months of January 2023 through June 2023, causing a delinquency in the amount of $7,882.36.  Said amount is comprised of:

1.  4 regular monthly payments (1/2023-4/2023)@ $925.24 each       $3700.96
2.  2 regular monthly payments (5/2023-6/2023)@ $932.04 each       $1864.08
3.  Movant's recoverable Attorney Fees ($700.00) and Costs ($188.00)       $888.00
4.  Additional Fees & Costs       $1,429.32

6.    The principal balance of this Note is $94,331.33.

7.    Debtor has not offered Movant adequate protection for the payment of indebtedness described herein, 11 U.S.C. § 362 (d)(1).

8.    Upon information and belief, Debtor has little or no equity in the Property for the benefit of the bankruptcy estate and said Property is not necessary for an effective reorganization. 11 U.S.C. §362(d)(2)(A) and §362(d)(2)(B).

9.    To the extent the Trustee intends to the sell the Property, Movant requests that Movant be provided adequate protection of its interest in the Property.

10.    Movant requests that any order modifying the stay be effective immediately as allowed under Federal Bankruptcy Rule 4001(a)(3).

**WHEREFORE**, for the foregoing reasons, Movant prays that this Court enter an Order granting relief from the automatic stay to enable Movant to exercise any and all rights provided under non-bankruptcy law and as set forth in the Note and Deed of Trust granting it an interest in said property, including but not limited to foreclosure of the Property, to pursue a short sale, deed in lieu of foreclosure or other foreclosure alternatives, to exercise its rights under state law to obtain possession of the property, that upon entry of an Order Granting Relief from Stay the collateral is deemed to be abandoned by the Chapter 7 Trustee as an asset of the bankruptcy estate,  that any order modifying the

stay be effective immediately as allowed under Fed. Rule Bankr. P. 4001(a)(3), and for such other and further relief as is just and appropriate under the circumstances.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

*/s/ Melinda J. Maune*
Melinda J. Maune, #49797MO, mmaune@atllp.com
Amy Tucker Ryan, #49047MO, atryan@atllp.com
7700 Forsyth Blvd, Ste. 1800
St. Louis, Missouri 63105
Phone: (314) 621-5070
Fax: (314) 621-5065
ATTORNEYS FOR MOVANT

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was filed electronically on the 13th day of June, 2023, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on the 13th day of June, 2023:

Alyssa N Janvrin
900 S Second St
De Soto, MO 63020

/s/ Melinda J. Maune
Melinda J. Maune, Attorney for Creditor

3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**Eastern Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **ALYSSA N JANVRIN AKA ALYSSA N TERRY** | ) | **Case No. 23-40934-659** |
| | ) | |
| Debtor. | ) | **Chapter 7** |
| | ) | |
| **PENNYMAC LOAN SERVICES, LLC** | ) | |
| | ) | |
| Movant, | ) | **DOCKET NO. _____** |
| | ) | |
| v. | ) | |
| | ) | |
| **ALYSSA N JANVRIN AKA ALYSSA N TERRY** | | |

Respondent.

## SUMMARY OF EXHIBITS

Pursuant to L.R. 9040-1, the following exhibits are referenced in support of Movant's Motion for Relief. Copies of these exhibits will be provided as required by Local Rules and are available upon request:

    A.  Note & Loan Modification

    B.  Deed of Trust

    C. Assignment of Deed of Trust

               Respectfully submitted,

               ARMSTRONG TEASDALE LLP

               */s/ Melinda J. Maune*
               Melinda J. Maune, #49797MO, mmaune@atllp.com
               Amy Tucker Ryan, #49047MO, aιryan@atllp.com
               7700 Forsyth Blvd, Ste. 1800
               St. Louis, Missouri 63105
               Phone: (314) 621-5070
               Fax: (314) 621-5065
               ATTORNEYS FOR MOVANT

## <u>CERTIFICATE OF SERVICE</u>

       I certify that a true and correct copy of the foregoing document was filed electronically on the 13th day of June, 2023, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

       I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on the 13th day of June, 2023:

Alyssa N Janvrin
900 S Second St
De Soto, MO 63020

                       /s/ Melinda J. Maune
                       Melinda J. Maune, Attorney for Creditor

EXHIBIT
A

LOAN #: [redacted]
MIN: [redacted]

## NOTE

FHA Case No.
[redacted]

July 24, 2018
[Date]

St Louis,
[City]

Missouri
[State]

900 S 2nd St, De Soto, MO 63020
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$100,152.00**       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **DAS Acquisition Company, LLC, a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.500 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **1st**        day of each month beginning on **September 1, 2018.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **August 1, 2048,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **12140 Woodcrest Executive, Ste 150**
**St. Louis, MO 63141**
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. **$568.65.**

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.

Page 1 of 3

FHA3200NOT   0216
FHA3200NOT (CLS)

LOAN #: ▮▮▮▮▮▮▮

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   7-24-16  (Seal)
CHRISTIAN JANVRIN

Lender: DAS Acquisition Company, LLC
NMLS ID: ▮▮▮▮▮
Loan Originator: Jaimie F Stockbarger
NMLS ID: ▮▮▮▮▮

[Sign Original Only]

LOAN #: ███████████

WITHOUT RECOURSE
DAS Acquisition Company, LLC, a Limited Liability Company

BY: _____

Jayne Siebert, Assistant Vice President

-OR-

BY: _____

Danielle Ploch, Assistant Vice President

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.                                        Page 3 of 3                              FHA3200NOT   0216
                                                                                               FHA3200NOT (CLS)

——————————————————————————————*[Space Above This Line For Recording Data]*——————————————————————————

**LOAN NO.:** ███████

**Investor Case No.** ███████

**Investor Loan No:** ███████

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **6th** day of **May, 2022**, between **CHRISTIAN JANVRIN AND ALYSSA JANVRIN** ("Borrower"), **PennyMac Loan Services, LLC** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **July 24, 2018** and in the amount of **$100,152.00** and recorded on **July 25, 2018** in Book, Volume, or Liber No. _____ , at Page _____ (or as Instrument No. **2018R-022435**) , of the **Official** Records of **JEFFERSON,MISSOURI** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

**900 SOUTH 2ND STREET, DE SOTO, MO 63020**
[Property Address]

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **July 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$95,056.04**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.750%**, from **June 1, 2022**. Borrower promises to make monthly payments of principal and interest of U.S. **$495.86**,

---

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
Page 1 of 7                                                                    10839MO 05/19

███████

——————————————————————————*[Space Above This Line For Recording Data]*—

**Loan No.:** ▮▮▮▮▮▮▮

# MISSOURI RECORDING COVERSHEET

Full legal description located on page 1.

Pursuant to Missouri law (MO Revised Statutes Section 59.310.2), the following information is required to be supplied on this coversheet in order to present the document or instrument for recording.

**Title of Document:** Loan Modification Agreement
**Date of Document:** May 6, 2022
**Name of Grantor(s):** CHRISTIAN JANVRIN AND ALYSSA JANVRIN
**Address of Grantor(s): 900 SOUTH 2ND STREET, DE SOTO, MO 63020**
**Name of Grantee(s):** PennyMac Loan Services, LLC
**Address of Grantee(s): 451 Seventh Street, SW, Washington, DC 20410**
**Name of Trustee(s):**
**Address of Trustee(s)**
**Legal Description of Property:  All of Lots Eleven (11) and Twelve (12), Block Thirty Six (36) of the Original Town, now City of De Soto, Missouri. Plat Book 1 Page 1**
**Reference  Instrument Number: 2018R-022435    Book:        Page:**

————————————————————*[Space Above This Line For Recording Data]*————————————————

**LOAN NO.:** ███████

**Investor Case No.** ███████

**Investor Loan No:** ███████

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **6th** day of **May, 2022**, between **CHRISTIAN JANVRIN AND ALYSSA JANVRIN** ("Borrower"), **PennyMac Loan Services, LLC** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **July 24, 2018** and in the amount of **$100,152.00** and recorded on **July 25, 2018** in Book, Volume, or Liber No. _____, at Page _____ (or as Instrument No. **2018R-022435**) , of the **Official** Records of **JEFFERSON,MISSOURI** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

**900 SOUTH 2ND STREET, DE SOTO, MO 63020**
[Property Address]
the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      As of **July 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$95,056.04**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.      Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.750%**, from **June 1, 2022**. Borrower promises to make monthly payments of principal and interest of U.S. **$495.86**,

beginning on the **1st** day of **July, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.750%** will remain in effect until principal and interest are paid in full. If on **June 1, 2052** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.     Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.     Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.     Borrower understands and agrees that:

    a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e)   Borrower agrees that they will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided for signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

f)   Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

g)   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment.  Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

6.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing the Loan Modification Agreement, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

7.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

_____    Date: 05/24/22

Borrower    -    CHRISTIAN JANVRIN

_____    Date: 5/24/22

Borrower    -    ALYSSA    JANVRIN    *SIGNING    SOLELY    TO
ACKNOWLEDGE    THIS    AGREEMENT,    BUT    NOT    TO
INCUR ANY PERSONAL LIABILITY FOR THE DEBT

## ACKNOWLEDGMENT

State of Missouri                    §
                                     §
County of Jefferson                  §

On this **24** day of **May**_____, **2022**, before me personally
appeared **CHRISTIAN JANVRIN AND ALYSSA JANVRIN**, to me known to be the person (or persons)
described in and who executed the foregoing instrument, and acknowledged that he (or they) executed the same as
his (or their) free act and deed.

_____
Signature of Officer

Andrea  L.  Siegfried
_____
Printed Name

Notary  Public
_____
Title of Officer

(Seal)

> ANDREA L. SIEGFRIED
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for Jefferson County
> My Commission Expires: November 12, 2025
> Commission Number: 13546948

My Commission Expires: 11/12/2025

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE

**PennyMac Loan Services, LLC**

_____ (Seal)
-Lender

**Tabitha Adamson**
**Assistant Vice President**

By: _____

**JUN 0 1 2022**
_____

Date of Lender's Signature

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ §
§
County of _____ §

On _____ before me, _____, Notary Public personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the same in his/her authorized capacity on behalf of the corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**SEE ATTACHED**
_____
Notary Public

_____
Printed Name

(Seal)

My Commission Expires: _____

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____Ventura_____ )

On ___06/01/2022_____ before me, __Armon Booth,  Notary Public_____
                                              (insert name and title of the officer)

personally appeared __Tabitha Adamson_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        **(Seal)**

ARMON BOOTH
Notary Public - California
Ventura County
Commission # 2374565
My Comm. Expires Sep 11, 2025

——————————————— *[Space Below This Line For Recording Data]* ———————————————

**After recording please return to:**
**ServiceLink**
**Attn: Loan Modification Solutions**
**3220 El Camino Real**
**Irvine, CA  92602**

## EXHIBIT A

**BORROWER(S): CHRISTIAN JANVRIN AND ALYSSA JANVRIN**

**LOAN NUMBER:** ▮▮▮▮▮▮

**LEGAL DESCRIPTION:**

**STATE OF MISSOURI, COUNTY OF JEFFERSON, AND DESCRIBED AS FOLLOWS:**

**ALL OF LOTS ELEVEN (11) AND TWELVE (12), BLOCK THIRTY SIX (36) OF THE ORIGINAL TOWN, NOW CITY OF DE SOTO, MISSOURI. PLAT BOOK 1 PAGE 1**

**Parcel ID Number:** ▮▮▮▮▮▮▮▮▮
**ALSO KNOWN AS: 900 SOUTH 2ND STREET, DE SOTO, MO 63020**

**2022R-021369**
**FILED AND RECORDED**
**IN OFFICIAL RECORD**
**06/28/2022 03:14 PM**
**DEBBIE DUNNEGAN, RECORDER**
**JEFFERSON COUNTY, MO**
**PAGES   9**
**RECORDING FEE      48.00**



————————————————————— *[Space Above This Line For Recording Data]* ██████████████

Loan No.: ██████████

# MISSOURI RECORDING COVERSHEET

Full legal description located on page 1.

Pursuant to Missouri law (MO Revised Statutes Section 59.310.2), the following information is required to be supplied on this coversheet in order to present the document or instrument for recording.

**Title of Document:** Loan Modification Agreement
**Date of Document:** May 6, 2022
**Name of Grantor(s): CHRISTIAN JANVRIN AND ALYSSA JANVRIN**
**Address of Grantor(s): 900 SOUTH 2ND STREET, DE SOTO, MO 63020**
**Name of Grantee(s): PennyMac Loan Services, LLC**
**Address of Grantee(s): 451 Seventh Street, SW, Washington, DC 20410**
**Name of Trustee(s):**
**Address of Trustee(s)**
**Legal Description of Property:  All of Lots Eleven (11) and Twelve (12), Block Thirty Six (36) of the Original Town, now City of De Soto, Missouri. Plat Book 1 Page 1**
**Reference  Instrument Number: 2018R-022435     Book:          Page:**

**EXHIBIT B**

**2018R-022435**
FILED AND RECORDED
IN OFFICIAL RECORD
07/25/2018 02:01:43PM
DEBBIE DUNNEGAN, RECORDER
JEFFERSON COUNTY, MO
PAGES 14
REC FEE: $63.00
NS FEE:

**This document was eRecorded**

———————————— Space above this line for recording data ————————————

When recorded, return to:
DAS Acquisition Company, LLC
12140 Woodcrest Executive, Ste 150
St. Louis, MO 63141
314-628-2213

LOAN #: ███████

# DEED OF TRUST COVER PAGE
## For Recorder of Deeds Indexing Purposes

This Cover Page **MUST** be attached with your recordable document

1. Document Being Recorded: Deed of Trust
2. Date of Document: **July 24, 2018**
3. Grantor/Borrower Name(s) for Indexing Purposes: **CHRISTIAN JANVRIN AND ALYSSA JANVRIN, HUSBAND AND WIFE**
   **900 S 2nd St**
   **De Soto, MO 63020.**

4. Grantee/Lender Name and Address for Indexing Purposes: **DAS Acquisition Company, LLC**
   **12140 Woodcrest Executive, Ste 150**
   **St. Louis, MO 63141**

5. Legal Description or Location of Legal Description in the Document:
   **All of Lots Eleven (11) and Twelve (12), Block Thirty Six (36) of the Original Town, now City of De Soto, Missouri.** Plat Book 1 Page 1
   **APN #:** ███████

6. Reference Book(s) and Page(s), if required: **N/A**

Missouri Recording Cover Page
Ellie Mae, Inc.

MOCOVERL  0315
MOCOVERL (CLS)



Title Order No.: ▮▮▮▮▮▮▮▮▮▮

LOAN #: ▮▮▮▮▮▮▮▮▮▮

———————————[Space Above This Line For Recording Data]———————————

## DEED OF TRUST

FHA Case No.
▮▮▮▮▮▮▮▮▮▮▮▮

MIN: ▮▮▮▮▮▮▮▮▮▮▮

MERS PHONE #: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 15.
**(A) "Security Instrument"** means this document, which is dated **July 24, 2018,**              , together with all
Riders to this document.
**(B) "Borrower"** is   **CHRISTIAN JANVRIN AND ALYSSA JANVRIN, HUSBAND AND WIFE.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is   **DAS Acquisition Company, LLC.**

Lender is   **a Limited Liability Company,**                                      organized and existing
under the laws of   **Missouri.**
Lender's address is   **12140 Woodcrest Executive, Ste 150, St. Louis, MO 63141.**

**MISSOURI**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3026 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                           Page 1 of 13                              MOEFHA15DL  0915
                                                                                                        MOEDEDL (CLS)



LICENSED TO DATA TREE, WHO SHALL NOT SUBLICENSE OR RELICENSE IMAGES IN BULK.



**LOAN #:** ███████████

**(D)** "Trustee" is   Loretta J. Pike, An Individual, 12140 Woodcrest Executive Drive, Ste 150, St. Louis, MO 63141.

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated   July 24, 2018.      The Note states that Borrower owes Lender   ONE HUNDRED THOUSAND ONE HUNDRED FIFTY TWO AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.  **$100,152.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **August 1, 2048.**

**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "Escrow Items" means those items that are described in Section 3.

**(N)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MISSOURI – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3026 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                          Page 2 of 13                   MOEFHA15DL   0915
                                                                        MOEDEDL (CLS)



LOAN #: ▮▮▮▮▮▮▮▮▮

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the  **County**                          of     **Jefferson**

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]:

**All of Lots Eleven (11) and Twelve (12), Block Thirty Six (36) of the Original Town, now City of De Soto, Missouri.** *Plat Book 1 Page 1*
**APN #:** ▮▮▮▮▮▮▮▮▮

which currently has the address of **900 S 2nd St, De Soto,**

[Street] [City]

**Missouri  63020**                 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent



**LOAN #:** ████████████

payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

MISSOURI – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3026 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

MOEFHA15DL  0915
MOEDEDL (CLS)



**LOAN #:** ███████

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower,

MISSOURI – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3026 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                              Page 5 of 13                    MOEFHA15DL  0915
                                                                             MOEDEDL (CLS)



**LOAN #:**

Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.



**LOAN #:** ████████████

If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

**MISSOURI**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **Form 3026 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

MOEFHA15DL  0915
MOEDEDL (CLS)



LOAN #: ██████████

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, rein-state as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instru-ment; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and

**MISSOURI** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3026 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

MOEFHA15DL  0915
MOEDEDL (CLS)



LOAN #: ██████████

agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the

MISSOURI – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3026 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

MOEFHA15DL   0915
MOEDEDL (CLS)



LOAN #: ████████████

expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

MISSOURI – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3026 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                              Page 10 of 13                              MOEFHA15DL  0915
MOEDEDL (CLS)



**LOAN #:** ▮▮▮▮▮▮▮

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the pur-chaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

**MISSOURI** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** **Form 3026 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 11 of 13 MOEFHA15DL 0915
MOEDEDL (CLS)



**LOAN #:** ▇▇▇▇▇▇▇▇

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**27. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent

MISSOURI – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3026 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                          Page 12 of 13                    MOEFHA15DL  0915
                                                                          MOEDEDL (CLS)



**LOAN #:** ███████████

per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**28. Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

**29. Notice.** Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____    7-24-18        (Seal)
CHRISTIAN JANVRIN

_____    7-24-18    (Seal)
ALYSSA JANVRIN

**STATE OF MISSOURI**                                    **JEFFERSON County ss:**

On this 24 day of July in the year 2018 before me, the undersigned notary public, personally appeared CHRISTIAN JANVRIN AND ALYSSA JANVRIN, known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

**My Term Expires:**

C. M. BARBEE
My Commission Expires
May 22, 2020
Jefferson County
Commission #12412993

_____
**Notary Public**

**Lender: DAS Acquisition Company, LLC**
**NMLS ID: 227262**
**Loan Originator: Jaimie F Stockbarger**
**NMLS ID: 1633963**

MISSOURI – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3026 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                    Page 13 of 13                    MOEFHA15DL  0915
                                                                    MOEDEDL (CLS)



————————————————————————*[Space Above This Line For Recording Data]*————————————————————————

**LOAN NO.:** ▮▮▮▮▮

**Investor Case No.** ▮▮▮▮▮

**Investor Loan No:** ▮▮▮▮▮

# LOAN MODIFICATION AGREEMENT
# (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **6th** day of **May, 2022**, between **CHRISTIAN JANVRIN AND ALYSSA JANVRIN** ("Borrower"), **PennyMac Loan Services, LLC** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **July 24, 2018** and in the amount of **$100,152.00** and recorded on **July 25, 2018** in Book, Volume, or Liber No. _____ , at Page _____ (or as Instrument No. **2018R-022435**) , of the **Official** Records of **JEFFERSON,MISSOURI** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

**900 SOUTH 2ND STREET, DE SOTO, MO 63020**
[Property Address]

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of **July 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$95,056.04**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.750%**, from **June 1, 2022**. Borrower promises to make monthly payments of principal and interest of U.S. **$495.86**,

---

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
Page 1 of 7                                                                                     10839MO 05/19

————————————————————————*[Space Above This Line For Recording Data]*————

Loan No.: ███████

# MISSOURI RECORDING COVERSHEET

Full legal description located on page 1.

Pursuant to Missouri law (MO Revised Statutes Section 59.310.2), the following information is required to be supplied on this coversheet in order to present the document or instrument for recording.

**Title of Document:** Loan Modification Agreement
**Date of Document:** May 6, 2022
**Name of Grantor(s): CHRISTIAN JANVRIN AND ALYSSA JANVRIN**
**Address of Grantor(s): 900 SOUTH 2ND STREET, DE SOTO, MO 63020**
**Name of Grantee(s): PennyMac Loan Services, LLC**
**Address of Grantee(s): 451 Seventh Street, SW, Washington, DC 20410**
**Name of Trustee(s):**
**Address of Trustee(s)**
**Legal Description of Property:  All of Lots Eleven (11) and Twelve (12), Block Thirty Six (36) of the Original Town, now City of De Soto, Missouri. Plat Book 1 Page 1**
**Reference  Instrument Number: 2018R-022435     Book:          Page:**

——————————————————————*[Space Above This Line For Recording Data]*——————————————————

**LOAN NO.:** ▮▮▮▮▮▮

**Investor Case No.** ▮▮▮▮▮▮

**Investor Loan No:** ▮▮▮▮▮

# LOAN MODIFICATION AGREEMENT
# (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **6th** day of **May, 2022**, between **CHRISTIAN JANVRIN AND ALYSSA JANVRIN** ("Borrower"), **PennyMac Loan Services, LLC** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **July 24, 2018** and in the amount of **$100,152.00** and recorded on **July 25, 2018** in Book, Volume, or Liber No. , at Page (or as Instrument No. **2018R-022435**) , of the **Official** Records of **JEFFERSON,MISSOURI** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

**900 SOUTH 2ND STREET, DE SOTO, MO 63020**
[Property Address]

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of **July 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$95,056.04**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.750%**, from **June 1, 2022**. Borrower promises to make monthly payments of principal and interest of U.S. **$495.86**,

beginning on the **1st** day of **July, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.750%** will remain in effect until principal and interest are paid in full. If on **June 1, 2052** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.   Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.   Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

   a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e)    Borrower agrees that they will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided for signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

g)    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

6.    I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing the Loan Modification Agreement, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

7.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

Borrower    CHRISTIAN JANVRIN                              Date: 05/24/22

Borrower  -  ALYSSA  JANVRIN  *SIGNING  SOLELY  TO       Date: 5/24/22
ACKNOWLEDGE  THIS  AGREEMENT,  BUT  NOT  TO
INCUR ANY PERSONAL LIABILITY FOR THE DEBT

## ACKNOWLEDGMENT

State of Missouri                    §
                                     §
County of Jefferson                  §

On this __24__ day of __May_____, __2022__, before me personally
appeared **CHRISTIAN JANVRIN AND ALYSSA JANVRIN**, to me known to be the person (or persons)
described in and who executed the foregoing instrument, and acknowledged that he (or they) executed the same as
his (or their) free act and deed.

_Andrea L Siegfried_
Signature of Officer

_Andrea L. Siegfried_
Printed Name

_Notary Public_
Title of Officer

(Seal)

ANDREA L. SIEGFRIED
Notary Public - Notary Seal
State of Missouri
Commissioned for Jefferson County
My Commission Expires: November 12, 2025
Commission Number: 13546948

My Commission Expires: 11/12/2025

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**PennyMac Loan Services, LLC**

_____ (Seal)
                                 -Lender

**Tabitha Adamson**
**Assistant Vice President**

By: _____

**JUN 0 1 2022**
_____
Date of Lender's Signature

### ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____                §
                                    §
County of _____               §

On _____ : _____ before me, _____, Notary Public personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the same in his/her authorized capacity on behalf of the corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**SEE ATTACHED**
_____
Notary Public

_____
Printed Name

(Seal)                              My Commission Expires: _____

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____Ventura_____ )

On __06/01/2022_____ before me, __Armon Booth, Notary Public_____
(insert name and title of the officer)

personally appeared __Tabitha Adamson_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**

ARMON BOOTH
Notary Public - California
Ventura County
Commission # 2374565
My Comm. Expires Sep 11, 2025

——————————————— *[Space Below This Line For Recording Data]* ———————————————

**After recording please return to:**
**ServiceLink**
**Attn: Loan Modification Solutions**
**3220 El Camino Real**
**Irvine, CA 92602**

## EXHIBIT A

**BORROWER(S): CHRISTIAN JANVRIN AND ALYSSA JANVRIN**

**LOAN NUMBER:** ▮▮▮▮▮▮

**LEGAL DESCRIPTION:**

**STATE OF MISSOURI, COUNTY OF JEFFERSON, AND DESCRIBED AS FOLLOWS:**

**ALL OF LOTS ELEVEN (11) AND TWELVE (12), BLOCK THIRTY SIX (36) OF THE ORIGINAL TOWN, NOW CITY OF DE SOTO, MISSOURI. PLAT BOOK 1 PAGE 1**

**Parcel ID Number:** ▮▮▮▮▮▮▮▮
**ALSO KNOWN AS: 900 SOUTH 2ND STREET, DE SOTO, MO 63020**

**2022R-021369**
**FILED AND RECORDED**
**IN OFFICIAL RECORD**
**06/28/2022 03:14 PM**
**DEBBIE DUNNEGAN, RECORDER**
**JEFFERSON COUNTY, MO**
**PAGES    9**
**RECORDING FEE        48.00**



—————————————————[*Space Above This Line For Recording Data*]—

**Loan No.:** ████████

# MISSOURI RECORDING COVERSHEET

Full legal description located on page 1.

Pursuant to Missouri law (MO Revised Statutes Section 59.310.2), the following information is required to be supplied on this coversheet in order to present the document or instrument for recording.

**Title of Document:** Loan Modification Agreement
**Date of Document:** May 6, 2022
**Name of Grantor(s): CHRISTIAN JANVRIN AND ALYSSA JANVRIN**
**Address of Grantor(s): 900 SOUTH 2ND STREET, DE SOTO, MO 63020**
**Name of Grantee(s): PennyMac Loan Services, LLC**
**Address of Grantee(s): 451 Seventh Street, SW, Washington, DC 20410**
**Name of Trustee(s):**
**Address of Trustee(s)**
**Legal Description of Property:  All of Lots Eleven (11) and Twelve (12), Block Thirty Six (36) of the Original Town, now City of De Soto, Missouri. Plat Book 1 Page 1**
**Reference  Instrument Number: 2018R-022435     Book:          Page:**

**Missouri Recording Coversheet**
**The Compliance Source, Inc.**                    **Page 1 of 1**                    **09017MO 12/01 Rev. 12/21**
**©2001-2021, The Compliance Source, Inc.**

**EXHIBIT C**

```
2019R-007710
FILED AND RECORDED
IN OFFICIAL RECORD
03/25/2019 08:37:45AM
DEBBIE DUNNEGAN, RECORDER
JEFFERSON COUNTY, MO
PAGES 2
REC FEE: $27.00
NS FEE:
```

**This document was eRecorded**

This Instrument Prepared By:
**VISIONET SYSTEMS INC**
After Recording Return To:
**OLD REPUBLIC SERVICING SOLUTIONS**
**P.O. BOX 250**
**ORANGE, CA 92856**

## Assignment of Deed Of Trust

Dated: **MAR 2 0 2019**

ORDER #: ▮▮▮▮▮
MIN #: ▮▮▮▮▮▮▮        MERS PHONE #: 1-888-679-6377

For value received, Grantor: Mortgage Electronic Registration Systems, Inc., as nominee for DAS ACQUISITION COMPANY, LLC., its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026, hereby grants, assigns, and transfers to: Grantee: **PennyMac Loan Services, LLC,** whose address is 3043 Townsgate Road, Suite 200, Westlake Village, CA 91361 under that certain Deed of Trust dated July 24, 2018 executed by:

Borrower: CHRISTIAN JANVRIN AND ALYSSA JANVRIN, HUSBAND AND WIFE

For Mortgage Electronic Registration Systems, Inc., as nominee for DAS ACQUISITION COMPANY, LLC., its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026 in the amount of: $100,152.00, recorded 07/25/2018 as Instrument No.: 2018R-022435 of the Official Records of Jefferson County, Missouri

Property Address: 900 S 2ND ST, DE SOTO, MISSOURI 63020
Tax Parcel ID: 24-1.2-02.1-2-015-001

**Legal Description**

All of Lots Eleven (11) and Twelve (12), Block Thirty Six (36) of the Original Town, now City of De Soto, Missouri. Plat Book 1 Page 1
APN #: ▮▮▮▮▮▮▮

## Accommodation

Mortgage Electronic Registration Systems, Inc., as nominee for
DAS ACQUISITION COMPANY, LLC., its successors and
assigns

By _____

SIGNER NAME:
SIGNER TITLE:                Gina Benn, Vice President

State of **TEXAS**
County of **TARRANT**        Hilda Mireya De La Cruz
Before me, _____, the undersigned officer, on this, **MAR 2 0 2019**

personally appeared _____ **Gina Benn** _____, ☐ known to me or, ☐ through production
of _____ as identification, who identified her/himself to be the
_____ **Vice President** _____ of Mortgage Electronic Registration Systems,
Inc., as nominee for DAS ACQUISITION COMPANY, LLC., its successors and assigns, the person and officer
whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had
executed the foregoing instrument as the act of such corporation for the purpose and consideration described and in
the capacity stated.

(seal)

HILDA MIREYA DE LA CRUZ
Notary ID #126856740
My Commission Expires
July 5, 2021

Notary Public, State of **TEXAS**
My Commission Expires: 07/05/21

02-19018118-01S | PAGE NO: 2